UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
MICHAEL ASSENG,

                    Plaintiff,                    MEMORANDUM & ORDER

          -against-                               14-CV-5275(JS)(AYS)

COUNTY OF NASSAU; NASSAU COUNTY
POLICE OFFICER JOHN BEISEL,                              **FILED**
Serial No. 7586; NASSAU COUNTY POLICE                    **CLERK**
OFFICER JOHN DOE #1; NASSAU COUNTY
POLICE OFFICER JOHN DOE #2; NASSAU              12/16/2021 11:15 am
COUNTY POLICE SERGEANT ANTHONY
GABRIELLI;  NASSAU  COUNTY  POLICE              **U.S. DISTRICT COURT**
OFFICER  JOHN  DOE  #3;  and  NASSAU    **EASTERN DISTRICT OF NEW YORK**
COUNTY ASSISTANT DISTRICT ATTORNEY            **LONG ISLAND OFFICE**
JOHN DOE #1,

                    Defendants.
-----------------------------------X
APPEARANCES
For Plaintiff:        Daniel S. Hallak, Esq.
                      The Russel Friedman Law Group, LLP
                      400 Garden City Plaza, Suite 500
                      Garden City, New York  11530

For Defendants:       Alexander E. Sendrowitz, Esq.
                      Quatela Chimeri PLLC
                      888 Veterans Memorial Highway, Suite 530
                      Hauppauge, New York  11788

SEYBERT, District Judge:

          On  September  9,  2014,  plaintiff  Michael  Asseng

("Plaintiff") commenced this action pursuant to 42 U.S.C. § 1983

against the County of Nassau (the "County"); Nassau County Police

Officer  John  Beisel  ("Officer  Beisel");  Nassau  County  Police

Officer  John  Does  #1-3;  Nassau  County  Police  Sergeant  Anthony

Gabrielli; and Nassau County Assistant District Attorney John Doe

1

#1 (collectively, "Defendants"). Plaintiff brings claims against Defendants for false arrest, malicious prosecution, and denial of medical treatment in violation of his Fourth and Fourteenth Amendment constitutional rights. Pending before the Court is Defendants' motion for summary judgment. (Mot., ECF No. 111; Support Memo, ECF No. 111-3; Opp'n, ECF No. 114; Reply, ECF No. 115.)[1] For the following reasons, Defendants' motion is DENIED.

<u>BACKGROUND</u>

Unless otherwise noted, the following facts are undisputed.[2]

---

[1] Pin citations to the parties' briefing will be to the document's internal pagination.

[2] Unless otherwise indicated, the facts are taken from Defendants' Rule 56.1 Statement (Defendants' Rule 56.1 Statement of Material Facts ("Defs. 56.1 Stmt."), ECF No. 111-1), and Plaintiff's Rule 56.1 Counter-Statement of Material Facts ((Plaintiff's Counter-Statement of Material Facts ("Pl. 56.1 Counterstmt."), ECF No. 112). Unless otherwise stated, a standalone citation to a Rule 56.1 Statement or Counterstatement denotes that either the parties agree, or the Court has determined, that the underlying factual allegation(s) is (are) undisputed. Citation to a party's Rule 56.1 Statement or Counterstatement incorporates by reference the document(s) cited therein.

Defendants' exhibits, which are attached to the Declaration of Alexander E. Sendrowitz (<u>see</u> ECF No. 111-2), are identified by letters. For ease of citation, the Court will simply cite to the lettered exhibits. Plaintiff's exhibits, which are attached to (1) his Rule 56.1 Counter-Statement of Material Facts, and (2) the Declaration of Daniel S. Hallak (<u>see</u> ECF No. 113), are identified by letters or numbers. Again, for ease of citation, the Court will simply cite to the lettered or numbered exhibits.

I.    Facts

       This case arises out of a school bus accident, which resulted in Plaintiff's arrest and subsequent prosecution by the County for five felony counts of aggravated driving while intoxicated.  The charges were later dismissed.

    A.    The Accident Scene

       Plaintiff worked as a bus operator for ACME Bus Corporation.  (Defs. 56.1 Stmt. ¶ 4.)  On January 18, 2013, while operating a school bus with four children on board, Plaintiff struck a stationary vehicle.  (Id.)  He pulled over and called 911 to report the accident.  (Id. ¶ 5.)[3]  At the time of the accident and at his doctor's direction, Plaintiff was taking over-the-counter Motrin for flu-like symptoms, having recently undergone treatment for kidney stones.  (Id. ¶¶ 1-3.)

       At 12:06 p.m., Officer Beisel arrived at the scene of the accident.  (Id. ¶ 6.)  The parties largely dispute what transpired next, though their disputes relate primarily to the characterization of Officer Beisel's observations of Plaintiff, i.e., whether Plaintiff displayed indicia of intoxication or a medical episode.  According to Defendants, upon arrival, "Plaintiff advised Officer Beisel that he 'felt dizzy.'"  (Id. ¶ 7.)  Plaintiff adds that he also told Officer Beisel that he "had

---

[3] No children were harmed in the accident.

kidney problems" and "might have a touch of the flu." (Pl. 56.1 Counterstmt. ¶ 7.) Officer Beisel also observed that Plaintiff "had glassy eyes, slurred speech, appeared to be disoriented and was unsteady on his feet." (Defs. 56.1 Stmt. ¶ 8.)

When Emergency Medical Technicians ("EMTs") from the South Farmingdale Fire Department ("SFFD") arrived, they reportedly observed Plaintiff "confused and not speaking clearly." (Id. ¶ 9 (citing SFFD Report, Ex. G).) The SFFD Report further assessed that Plaintiff complained of general malaise and that he was experiencing altered mental status. (Id.) With Plaintiff's permission, at 12:20 p.m., the EMTs performed a glucose check, which was 96, or not a concerning level. (Id.) The SFFD Report also noted that Officer Beisel conducted a breathalyzer, which came back negative. (Id.) According to Plaintiff, he submitted to three breathalyzers at the scene of the accident, the results of which were all negative. (Pl. 56.1 Counterstmt. ¶¶ 10-11 (citing Asseng Depo. Tr. at 22:11-23:18, Ex. C).) At 12:37 p.m., the SFFD EMTs transferred care of Plaintiff to Officer Beisel. (SFFD Report, Ex. G.)

Plaintiff disputes Defendants' characterization of the EMTs' medical evaluation, claiming that Officer Beisel rebuffed efforts by one of the EMTs, EMT Lee, to take Plaintiff's vitals. (Pl. 56.1 Counterstmt. ¶¶ 15-17.) Specifically, Plaintiff asserts that EMT Lee advised Officer Beisel that Plaintiff needed immediate

4

medical attention, but that Officer Beisel told him to "get lost." (Id. (citing Asseng Depo. Tr. at 22:18-23:22, Ex. C); see also Asseng Aff., Ex. B, ¶¶ 23-25.)  According to Plaintiff, had EMT Lee checked Plaintiff's vitals, they would have showed signs of sepsis. (Pl. 56.1 Counterstmt. ¶ 18 (citing Dr. Keck Report, Ex. 16, at 4).)  In Plaintiff's telling, with the EMTs dismissed, he communicated to Officer Beisel that his need for medical attention was solely in the officer's hands.  (Id. ¶ 16.)  Plaintiff also points out that a Nassau County Police Department Ambulance Medical Technician ("AMT"), AMT Milton, arrived at the scene but did not conduct any tests or interview Plaintiff after speaking with the EMTs (id. ¶¶ 19-23), although it appears from AMT Milton's deposition that this was the case because the SFFD EMTs told him "they could handle it" (AMT Milton Depo. Tr. at 81:12-19, Ex. 2).

After the SFFD EMTs transferred Plaintiff back to Officer Beisel, he instructed Plaintiff to perform a field sobriety test.  (Defs. 56.1 Stmt. ¶ 10.)  Plaintiff failed:  During the horizontal gaze nystagmus test, Officer Beisel observed that Plaintiff's "eyes were dilated, and both his right and left eye lacked smooth pursuit" (id.); during the walk and turn test, Plaintiff "could not keep his balance," started the test too soon, and "within the first 9 steps, Plaintiff stopped walking, missed heel to toe, stepped off the line, raised his arms and was only able to take four steps" (id.); and, Plaintiff was unable to

perform the one leg stand test (id.).  As a result, at 12:55 p.m., Officer Beisel arrested Plaintiff and transported him to the Nassau County Central Testing Unit ("CTU").

    B.   The Central Testing Unit

      While at the CTU, one of the on-duty officers, Officer Baietto, observed Plaintiff had "glassy eyes" and "trouble walking to [the] test area."  (Id. ¶ 12.)  He further observed that the "effects of alcohol [or] drugs" were "obvious" to "moderate." (Id.)  According to Officer Baietto's contemporaneous notes, Plaintiff was sweating and kept stating, "I'm tired, I can sleep right here, I'm exhausted."  (Id.)  Plaintiff also complained of pain to the left side of his chest above his stomach.  (Id. ¶ 13; see also Pl. 56.1 Counterstmt. ¶ 29.)  Plaintiff consented to a breath test by Officer Baietto to determine his blood alcohol content, which came back negative.  (Pl. 56.1 Counterstmt. ¶¶ 30, 33.)  Plaintiff also consented to a chemical test of his urine but was unable to urinate.  (Id. ¶¶ 34-36.)  According to Plaintiff, officers at the CTU ridiculed him for being unable to urinate and handcuffed him to a bench.  (Id. ¶ 37.)

      Unable to collect a urine sample, Plaintiff was transported, in police custody, to Nassau University Medical Center ("NUMC") for a blood test, which the CTS did not have the ability to conduct.  (Id. ¶ 41.)

C.   <u>The Nassau University Medical Center</u>

Plaintiff arrived at NUMC at 3:05 p.m. and underwent triage shortly thereafter.  (Defs. 56.1 Stmt. ¶ 14.)  Plaintiff's vitals showed an increased heart rate of 107, a temperature of 102.6 degrees, and that he was in severe sepsis.  (Pl. 56.1 Counterstmt. ¶ 44.)  By the time Plaintiff arrived at the hospital, his medical conditions had deteriorated to the point that he was only able to effectively communicate that he had trouble urinating. (<u>Id.</u> ¶ 45.)  At 3:45 p.m., a County police officer arrived at NUMC with a blood kit, and Plaintiff submitted to a chemical test of his blood.  (<u>Id.</u> ¶ 46.)  A urinary drug screening also revealed the presence of opiates in Plaintiff's system.  (NUMC Patient Report of Urine Culture, Ex. M.)

Later that evening, at 10:39 p.m., Plaintiff underwent a computed tomography ("CT") scan that showed "multiple foci of air in the posterior left upper abdomen and some inflammation around [the] kidney near [the] right kidney stent."  (<u>Id.</u> ¶ 52.) Thereafter, Plaintiff was admitted to the Surgical Intensive Care Unit and started on antibiotics for a urinary tract infection. (<u>Id.</u> ¶ 54.)  His medical condition deteriorated overnight with worsening sepsis that included fever and decreased blood pressure. (<u>Id.</u> ¶ 60.)

The next day, January 19, 2013, in the morning, a second CT scan revealed "highly suspicious" findings indicating a

"localized stomach perforation." (Id. ¶ 63.) According to Plaintiff's experts, the perforation was caused by the Motrin Plaintiff had been taking and led to "leaking stomach contents into [his] abdominal cavity and chest," necessitating "prompt[] . . . surgical intervention." (See, e.g., Dr. Keck Report, Ex. 16, at 4.) Later that afternoon, after Plaintiff and his wife consulted with a surgeon, Plaintiff underwent surgery. (Pl. 56.1 Counterstmt. ¶ 66.) After the operation, due to sepsis, Plaintiff remained on a ventilator until February 5, 2013. (Id. ¶¶ 67-70.) On February 22, 2013, Plaintiff was transferred to NUMC's rehabilitation facility and was discharged on March 5, 2013. (Id. ¶¶ 71, 78.) However, he returned to the hospital a day later for further treatment. (Id. ¶ 79.)

D.   The Decision to Prosecute Plaintiff

Meanwhile, at the CTU, Officer Beisel consulted with Nassau County Assistant District Attorney ("ADA") Christopher Casa, who was working in the Early Case Assessment Bureau ("ECAB") on the evening of January 18, 2013. (Pl. 56.1 Counterstmt. ¶ 49.) Plaintiff asserts that "ADA Casa was never advised of Plaintiff's medical condition by Officer Beisel," but at his deposition ADA Casa only stated that he did not recall whether Office Beisel informed him whether Plaintiff had been examined by an AMT or EMT prior to his arrest. (Compare id. ¶ 51, with Casa Depo Tr. at 151:12-15, Ex. 3.) However, the following day, the ECAB

8

supervisor, ADA Morrone, consulted with the officer assigned to maintain custody of Plaintiff at NUMC and determined that "it is unclear at this time if the defendant is suffering a medical emergency due to illness unrelated to drug use or if he is in a medical emergency due to drug use." (Pl. 56.1 Counterstmt. ¶ 61; see also Morrone Depo Tr. at 99:4-7, Ex. 4.)

In any event, on the same day of the accident, Plaintiff was charged with five counts of violating New York's Vehicle Traffic Law ("VTL"). Specifically, Plaintiff was charged with four counts of violating VTL § 1192(2-a)(b) and one count of violating VTL § 1192(4). (Defs. Stmt. ¶ 19.) At 11:55 p.m. that evening, the County Police Department filed a press release regarding Plaintiff's arrest. (Press Release, Ex. 20.)

E.    Plaintiff is Prosecuted

While Plaintiff was in NUMC prior to surgery, a County Police Department Officer left a desk ticket next to Plaintiff's hospital bed, advising him to appear in court on February 1, 2013 to answer the charges. (Pl. 56.1 Counterstmt. ¶ 64.) It appears from the record that, due to his medical condition, Plaintiff did not appear on that date, but instead was arraigned on the charges on February 19 or March 13, 2013. (Id. ¶¶ 76, 80.) However, on February 7, 2021, prior to his arraignment, Plaintiff's toxicology exam results came back negative for any drugs. (Id. ¶ 72.) On

April 17, 2013, when Plaintiff apparently failed to appear, a
warrant was ordered but stayed.  (Id. ¶ 81.)

On June 14, 2013, the felony complaints against
Plaintiff were reduced to misdemeanors, and after the reduction of
the charges, the assigned judge dismissed the charges upon hearing
that there were no illegal substances in Plaintiff's system on the
day on the accident.  (Id. ¶¶ 82-84.)

II.  Procedure

Plaintiff initiated this action on September 9, 2014,
alleging violations of his Fourth and Fourteenth Amendment
constitutional rights, as well as several state law claims for
false arrest, malicious prosecution, failure to supervise, denial
of medical treatment, assault, battery, and defamation.  (Compl.,
ECF No. 1, ¶¶ 151-83, 196-207, 216-273.)  On July 30, 2015, the
Court dismissed Plaintiff's state law claims for false arrest,
assault, battery, failure to supervise, and defamation.  (Order,
ECF No. 22.)  Further, on July 31, 2020, Plaintiff voluntarily
agreed to withdraw his Section 1983 claims for failure to
supervise, Monell liability, excessive force, substantive due
process violations, and "unconstitutional policies, practices, and
procedures."  (See ECF No. 104; Opp'n at 1 n.1.)

Accordingly, the causes of action subject to this motion
are three Section 1983 claims for (1) false arrest; (2) malicious
prosecution; and (3) denial of medical care.

10

DISCUSSION

I.   Legal Standard

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  "Material facts are those which might affect the outcome of the suit under the governing law, and a dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Wagner v. Chiari & Ilecki, LLP, 973 F.3d 154, 164 (2d Cir. 2020) (quoting Coppola v. Bear Stearns & Co., 499 F.3d 144, 148 (2d Cir. 2007)) (internal quotation marks omitted).  The movant bears the burden of establishing that there are no genuine issues of material fact for trial.  Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial," as Plaintiff does here, "the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim."  Gummo v. Vill. of Depew, 75 F.3d 98, 107 (2d Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)).  "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper."  Hetchkop v. Woodlawn at Grassmere, Inc., 116 F.3d 28,

33 (2d Cir. 1997).  Moreover, "the court is not to make assessments of the credibility of witnesses" on a motion for summary judgment, as "[c]redibility assessments, choices between conflicting versions of events, and weighing of the evidence are matters for the jury."  Id.

On a motion for summary judgment the Court considers the "pleadings, deposition testimony, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011).  In reviewing the record, "the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  Sheet Metal Workers' Nat'l Pension Fund v. Vadaris Tech. Inc., No. 13-CV-5286, 2015 WL 6449420, at *2 (E.D.N.Y. Oct. 23, 2015) (quoting McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997)).  When drawing inferences from evidence in the record in favor of the non-moving party, however, a court should not accord the non-moving party the benefit of "unreasonable inferences, or inferences at war with undisputed facts."  Berk v. St. Vincent's Hosp. & Med. Ctr., 380 F. Supp. 2d 334, 342 (S.D.N.Y. 2005) (quoting County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295, 1318 (2d Cir. 1990)).

II.  Analysis

    A.  False Arrest & Malicious Prosecution

        1.  Applicable Law

        To succeed on a Section 1983 claim for false arrest, the plaintiff must show "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Avant v. Miranda, No. 21-CV-0974, 2021 WL 1979077, at *4 (E.D.N.Y. May 18, 2021) (quoting Wheeler v. Kolek, No. 16-CV-7441, 2020 WL 6726947, at *4 (S.D.N.Y. Nov. 16, 2020)).

        As for a Section 1983 claim for malicious prosecution, "a plaintiff must show a violation of his rights under the Fourth Amendment . . . and must establish the elements of a malicious prosecution claim under state law." Manganiello v. City of New York, 612 F.3d 149, 160–61 (2d Cir. 2010) (internal citations omitted).  Under New York law, a claim for malicious prosecution requires: "(1) the initiation or continuation of a criminal proceeding against the plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Id. at 161 (quoting Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997)); see also Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003).  In addition, under Section 1983,

13

the plaintiff must further demonstrate "a post-arraignment deprivation of liberty that rises to the level of a constitutional violation." Bailey v. City of New York, 79 F. Supp. 3d 424, 448 (E.D.N.Y. 2015) (citing Boley v. Durets, No. 12-CV-4090, 2013 WL 6562445, at *5 (E.D.N.Y. Dec. 10, 2013)). "[A]n arresting officer may be held liable for malicious prosecution when a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, or when she withholds relevant and material information." Shabazz v. Kailer, 201 F. Supp. 3d 386, 392 (S.D.N.Y. 2016) (quoting Frederique v. County of Nassau, No. 11-CV-1746, 2016 WL 1057008, at *12 (E.D.N.Y. Mar. 11, 2016)).

The existence of probable cause is a complete defense to a claim for false arrest and malicious prosecution. Ackerson v. City of White Plains, 702 F.3d 15, 19 (2d Cir. 2012) (false arrest); Savino, 331 F.3d at 72 (malicious prosecution). However, the relevant probable cause determination depends on the stage of the criminal proceeding.

At the arrest stage, the Second Circuit has described probable cause as "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed . . . a crime." Stansbury v. Wertman, 721 F.3d 84, 89 (2d Cir. 2013) (quoting Jaegly v. Couch, 439 F.3d 149, 152 (2d

Cir. 2006)); Ashley v. City of New York, 992 F.3d 128, 136 (2d Cir. 2021).  "To assess probable cause, a court considers only the facts 'available to the officer at the time of the arrest and immediately before it.'"  Ashley, 993 F.3d at 136 (quoting Stansbury, 721 F.3d at 89).

At the prosecution stage, however, the probable cause standard is "slightly higher."  Stansbury, 721 F.3d at 95; Hoyos v. City of New York, 650 F. App'x 801, 802 (2d Cir. 2016) (summary order).  "Probable cause, in the context of malicious prosecution, has also been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." Stansbury, 721 F.3d at 95 (quoting Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003)); Hoyos v. City of New York, 999 F. Supp. 2d 375, 390 (E.D.N.Y. 2013) ("[T]he relevant probable cause determination is whether there was probable cause to believe the criminal proceeding could succeed and, hence, should be commenced.").  As a result, timing is key, with probable cause in the context of malicious prosecution being measured "as of the time the judicial proceeding is commenced (e.g., the time of the arraignment)," not the time of the arrest.  Hoyos, 999 F. Supp. 2d at 390 (quoting Davis v. City of New York, 373 F. Supp. 2d 322, 333 (S.D.N.Y. 2005)); id. ("Information obtained 'after the arrest, but before the commencement of proceedings, is relevant to the determination of probable cause' for a malicious prosecution

claim." (quoting <u>Jackson v. City of New York</u>, 939 F. Supp. 2d 235, 251 (E.D.N.Y. 2013)); <u>Stone v. Port Authority</u>, No. 11-CV-3932, 2014 WL 3110002, at *9 (E.D.N.Y. July 8, 2014) ("[E]ven when probable cause is present at the time of arrest, evidence could later surface which would eliminate that probable cause."); <u>Jean v. County of Nassau</u>, No. 14-CV-1322, 2020 WL 1244786, at *9 (E.D.N.Y. Mar. 16, 2020) (citing <u>McDermott v. City of New York</u>, No. 94-CV-2145, 1995 WL 347041, at *5 (E.D.N.Y. May 30, 1995) ("In the absence of some indication that the authorities became aware of exculpatory evidence between the time of the arrest and the subsequent prosecution that would undermine the probable cause which supported the arrest, no claim for malicious prosecution may lie.")).

  2. <u>Application</u>

   Defendants argue that they had probable cause to arrest and prosecute Plaintiff, or, in the alternative, that Officer Beisel is entitled to qualified immunity.  (Support Memo at 8-14.) The Court addresses their arguments in turn.

   Defendants contend that Officer Beisel had probable cause to arrest and ultimately prosecute Plaintiff under New York's Vehicle Traffic Laws.  In support of their probable cause determination at the arresting stage, Defendants raise the following undisputed facts: (1) Plaintiff crashed his school bus into a stationary vehicle; (2) Upon arriving at the scene, Officer

Beisel found Plaintiff sitting in his school bus disoriented, and observed that Plaintiff had glassy eyes, slurred speech, and was unsteady on his feet; (3) EMT Lee performed a glucose check on Plaintiff, revealing a medically non-concerning level of 96, thus eliminating diabetes as the cause of Plaintiff's physical condition; and (4) Plaintiff failed various field sobriety tests. (Id. at 9-11.)  According to Defendants, these "visible indicia of impairment" were more than sufficient to establish probable cause for Plaintiff's arrest.  (Id. at 10.)  Defendants rely on the same facts to support their probable cause determination at the prosecution stage, adding only that while at the NUMC, a urinary drug screening revealed the presence of opiates in Plaintiff's system.  (Id. at 12.)  Plaintiff counters that Officer Beisel failed to consider exculpatory evidence, including from EMT Lee, that indicated Plaintiff was undergoing a medical episode, not intoxicated.  (Opp'n at 10-24.)

        The Court recognizes that, in the context of a traffic stop, Plaintiff's "own protestations of innocence and requests for medical treatment, standing alone," were likely insufficient to negate probable cause in the presence of other indicia of intoxication, as existed here.  Aguilera v. County of Nassau, 453 F. Supp. 2d 601, 607 (E.D.N.Y. 2006) (Spatt, J.).  However, as in Aguilera, here there were "other factors present during the traffic stop at issue."  Id.  In Aguilera, the plaintiff, working as a

limo driver, was pulled over after operating his vehicle in an erratic manner.  Id. at 603.  During the traffic stop, the plaintiff fell down multiple times, "needing help to his feet"; he also dropped his wallet but could not retrieve its contents due to lack of coordination.  Id. at 603-04.  One of the officers commented that it looked like the plaintiff was having a stroke. Id. at 604.  The plaintiff informed the officer that he had not had anything to drink and was instead "not feeling well" and that "'something [was] wrong' with him."  Id.  The couple whom the plaintiff had been driving further informed the police that they believed the plaintiff was ill.  Id.  Nevertheless, the officers arrested the plaintiff.

On these facts, Judge Spatt declined to conclude that the officers had probable cause to defeat the plaintiff's false arrest claim, reasoning that "[e]ven if the officers were justified to pull the plaintiff over based on their suspicion that he was driving while intoxicated," the "sequence of events occurring after the plaintiff was stopped could have prevented that suspicion from rising to the level of probable cause in the mind of a reasonably cautious person."  Id. at 607.  Specifically, Judge Spatt found that "the plaintiff's obvious physical condition; the two witnesses that are alleged to have requested that the plaintiff receive medical attention;" and the comments by one of the

arresting officers countenanced against a finding of probable cause to arrest. Id. at 608.

Similarly, here, factors present at the accident scene create an issue of material fact as to whether Officer Beisel had probable cause to arrest Plaintiff. In particular, the parties dispute whether Officer Beisel rebuffed efforts by the SFFD EMTs to approach the accident scene as a medical situation, not a crime scene. Further, the undisputed record demonstrates that the EMTs never took Plaintiff's vitals, and Plaintiff consented to and passed three consecutive breathalyzers, providing additional objective support for Plaintiff's narrative of events. Moreover, Plaintiff readily agreed to submit to a chemical analysis of his urine to test for illicit substances. Drawing all permissible factual inferences in Plaintiff's favor as the non-moving party, the Court finds reasonable jurors could conclude that Officer Beisel lacked probable cause to arrest Plaintiff. While Officer Beisel was "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest," Ricciuti v. N.Y.C. Transit Auth., 123 F.3d 123, 128 (2d Cir. 1997), he was not entitled to ignore plainly exculpatory evidence, Panetta v. Crowley, 460 F.3d 388, 394-95 (2d Cir. 2006).[4]

---

[4] The Court finds the New York State Court decisions cited by Defendants (see Support Memo at 10-11) distinguishable because the record in those cases did not involve factual disputes as to

Defendants further argue that EMT Lee's statements are inadmissible hearsay.  (Reply at 1-6.)  At issue are certain statements Plaintiff made during his deposition, as reflected in his affidavit, i.e., that EMT Lee told Officer Beisel that Plaintiff was not intoxicated and needed prompt medical treatment but was rebuffed by Officer Beisel, who told him to "get lost."

It is well settled that "only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment," and a "district court deciding a summary judgment motion has broad discretion in choosing whether to admit evidence." Presbyterian Church of Sudan v. Talisman Energy, Inc., 582 F.3d 244, 264 (2d Cir. 2009).  "Because a party cannot rely on inadmissible hearsay in support of or in opposition to a motion for summary judgment, the Court must, as a preliminary matter, determine the likely admissibility of the hearsay evidence offered by a party." Unicorn Crowdfunding, Inc. v. New St. Enter., Inc., 507 F. Supp. 3d 547, 571 (S.D.N.Y. 2020) (quoting Wilkinson v. Nord Anglia Educ. Ltd., No. 17-CV-7421, 2019 WL 3430662, at *2 n.3 (S.D.N.Y. July 30, 2019) (internal citations omitted)). "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  FED. R. EVID. 801(c).

---

whether the arrestee was undergoing a medical episode or simply intoxicated.

However, "[o]ut-of-court statements are not hearsay if offered to show the context within which parties were acting, or to show a party's motive or intent for behavior." Arista Records LLC v. Lime Group LLC, 784 F. Supp. 2d 398, 420-21 (S.D.N.Y. 2011) (citing Weinstein's Federal Evidence, § 801.11[5]); see also United States v. Salameh, 152 F.3d 88, 112 (2d Cir. 1998). Moreover, "out-of-court statements are not considered hearsay if used to prove notice or knowledge." Id. (citing Cameron v. Cmty. Aid for Retarded Children, 335 F.3d 60, 65-66 (2d Cir. 2003)).

Here, the Court finds that the statements attributed to EMT Lee and Officer Beisel are not offered to prove the truth of the matter asserted, i.e., that Plaintiff needed prompt medical treatment. Rather, they are being offered for non-hearsay purposes, such as to show that Officer Beisel had knowledge or notice that others at the accident scene were concerned that, rather than being intoxicated, Plaintiff was experiencing a medical episode, and to provide greater context of what transpired at the scene of arrest. In this way, the statements serve the same purpose as the statements made by the bystanders in Aguilera: they call into dispute the probable cause determination by showing others at the accident scene may have viewed the situation differently from Officer Beisel. Accordingly, the Court declines to strike these statements and considers them for the foregoing limited, non-hearsay purposes.

The Court next addresses Officer Beisel's claim to qualified immunity. See Pearson v. Callahan, 555 U.S. 223 (2009). Qualified immunity shields government officials from civil liability resulting from the performance of their discretionary functions only where their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Wallace v. Suffolk County Police Dep't, 396 F. Supp. 2d 251, 265 (E.D.N.Y. 2005) (Seybert, J.) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). An officer is entitled to qualified immunity under Section 1983 unless "(1) [he] violated a federal statutory or constitutional right, and (2) the unlawfulness of [his] conduct was 'clearly established at the time.'" D.C. v. Wesby, 138 S. Ct. 577, 589 (2018) (citing Reichle v. Howards, 566 U.S. 658, 664 (2012)). "A court may grant summary judgment on qualified immunity grounds 'if [the movant] adduces sufficient facts such that no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiff[], could conclude that it was objectively unreasonable for the [movant] to believe that he was acting in a fashion that did not clearly violate an established federally protected right.'" Vlahadamis v. Kiernan, 837 F. Supp. 2d 131, 159 (E.D.N.Y. 2011) (quoting Hartline v. Gallo, 546 F.3d 95, 102 (2d Cir. 2008)).

The Court begins by "defining 'the circumstances with which the officers were confronted,'" Wesby, 138 S. Ct. at 590-91 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987) (cleaned up)), bearing in mind that it must draw all permissible inferences in Plaintiff's favor.  Officer Beisel arrived at the accident scene and found the bus driver, Plaintiff, in a confused state; Plaintiff consented to and passed three breathalyzers; Office Beisel received some push back from one of the EMTs on the scene; and Plaintiff failed the field sobriety tests Officer Beisel administered.  On this record, much of which is disputed, the Court finds genuine disputes of material fact remain at this stage regarding Plaintiff's claims, including whether Officer Beisel had probable cause to arrest Plaintiff.  As such, the genuine issues of material fact that preclude summary judgment on Plaintiff's false arrest claim likewise preclude granting Officer Beisel qualified immunity at this juncture.  See Cobb v. Pozzi, 363 F.3d 89, 111-12 (2d Cir. 2004).

Last, turning to Plaintiff's malicious prosecution claim, the Court finds that Defendants, unable to establish as a matter of law probable cause in the context of Plaintiff's arrest, cannot establish the "slightly higher" probable cause standard that applies at the prosecution stage.  Rather, on this record, the Court concludes that genuine issues of material fact exist as to whether, between Plaintiff's arrest and subsequent prosecution,

exculpatory evidence surfaced that undermined or even eliminated
the probable cause that supported Plaintiff's arrest.  To begin,
the parties genuinely dispute whether ADA Casa, who worked in the
ECAB unit that charged Plaintiff the evening of his accident, was
advised that Plaintiff was possibly undergoing a medical episode
at the time of his arrest.  In any event, the following morning,
after ADA Morrone reviewed the record of Plaintiff's arrest and
spoke to one of the officers in charge of Plaintiff at the
hospital, she appeared uncertain whether to characterize
Plaintiff's condition as resulting from a medical episode or
intoxication.  And the February 7, 2021 toxicology results likely
put to rest any doubt that Plaintiff was under the influence at
the time of the accident.[5]  Accordingly, reasonable jurors could
conclude that these facts dissipated any probable cause the
Defendants may have had to prosecute Plaintiff.  Moreover, because
it would be reasonable to conclude that probable cause to prosecute
was lacking, malice may be inferred as well.  See Wong v. Yoo, 649
F. Supp. 2d 34, 67 (E.D.N.Y. 2009).  Regardless, reasonable jurors
could conclude that Officer Beisel was motivated by "something
other than a desire to see the ends of justice served," Lowth v.

---

[5] Defendants also argue that, because the urinary drug screening
test Plaintiff underwent at NUMC revealed the presence of opiates
in Plaintiff's system, Defendants had probable cause to prosecute
Plaintiff.  Because Plaintiff claims that his medical records from
the hospital show he was provided with morphine prior to the test,
the Court is not persuadeds.

<u>Town of Cheektowaga</u>, 82 F.3d 563, 573 (2d Cir. 1996), from his conduct at the accident scene, which the Court must construe in the light most favorable to Plaintiff, and the subsequent treatment of Plaintiff while at CTS, where he was allegedly ridiculed for his inability to urinate.

Accordingly, Defendants' motion for summary judgment as to Plaintiff's false arrest and malicious prosecution claims is DENIED.

B.   <u>Denial of Medical Treatment</u>

Next, Plaintiff argues that Officer Beisel violated his constitutional rights through his deliberate indifference to his need for medical treatment.

1.   <u>Applicable Law</u>

The Due Process Clause of the Fourteenth Amendment imposes a duty upon custodial officials to ensure pre-trial detainees receive adequate medical care that is coterminous with the duty imposed upon prison officials by the Cruel and Unusual Punishments Clause of the Eight Amendment, which protects convicted prisoners. <u>Salahuddin v.</u> Goord, 467 F.3d 263, 279 (2d Cir. 2006) (prisoner); <u>Weyant v. Okst</u>, 101 F.3d 845, 856 (2d Cir. 1996) (pre-trial detainee); <u>Liggins v. Griffo</u>, 356 F. App'x 537, 539 (2d Cir. 2009) (observing same standard applies to prisoners and pre-trial detainees). "Thus, the official custodian of a pretrial detainee may be found liable for violating the detainee's

due process rights if the official [1] denied treatment needed to remedy a serious medical condition and [2] did so because of his deliberate indifference to that need." Weyant, 101 F.3d at 856. "A medical need is sufficiently serious if it is 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'" Johnson v. City of New York, No. 12-CV-8265, 2014 WL 5393181, at *4 (S.D.N.Y. Oct. 21, 2014) (quoting Johnson v. Wright, 412 F.3d 398, 403 (2d Cir. 2005)). In this context, deliberate indifference may be shown "by evidence that the official acted with reckless disregard for the substantial risk posed by the detainee's serious medical condition." Weyant, 101 F.3d at 856; see also Salahuddin, 467 F.3d at 281.

      2.  Application

      First, with respect to the "objective element," i.e., whether the alleged deprivation of medical treatment was sufficiently serious, the parties dispute whether this case involves a delay or interruption of ongoing medical treatment, or a failure to provide any treatment for Plaintiff's condition. (Opp'n 25-26; Reply at 8-9.) Arguing this case is predicated on a delay of medical treatment, Defendants contend that the Court should "focus on the challenged delay or interruption in treatment[,] rather than [Plaintiff's] underlying medical condition alone," to determine whether the medical need was sufficiently serious. (Support Memo at 15 (quoting Johnson, 2014

WL 5393181, at *5).)   While the approach associated with delay-in-treatment cases is often applied where an inmate-plaintiff claims prison officials delayed or interrupted his ongoing course of treatment at the prison hospital, see Salahuddin, 467 F.3d at 270-71; Smith v. Carpenter, 316 F.3d 178, 184-85 (2d Cir. 2003), courts also apply it in cases similar to the instant action, see, e.g., Johnson, 2014 WL 5393181, at *1-2 (applying delay-in-treatment approach where pre-trial detainee who injured his ankle during arrest alleged the arresting officers delayed in taking him to the hospital for treatment).

Even focusing on the delay or interruption in treatment, rather than Plaintiff's underlying medical condition, to determine whether the alleged deprivation of care was, in objective terms, sufficiently serious to support a Fourteenth Amendment claim, the Court concludes that genuine disputes of material fact preclude summary judgment.  "[A] serious medical need 'exists where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'"  Smith, 316 F.3d at 187 (quoting Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000)).  Thus, in a case like this, "the serious medical need inquiry can properly take into account the severity of the temporary deprivation alleged by the prisoner." Smith, 316 F.3d at 186.  As the Second Circuit has instructed, district courts must consider "the particular risk of harm faced

27

by a prisoner due to the challenged deprivation of care." Id. (citing Chance v. Armstrong, 143 F.3d 698, 702-03 (2d Cir. 1998); see also Demata v. New York State Corr. Dep't of Health Servs., 198 F.3d 233 (2d Cir. 1999) (holding the plaintiff could not sustain an Eighth Amendment claim for deliberate indifference to serious medical needs where he could not demonstrate his injuries degenerated as a result of the alleged deprivation of treatment); Bilal v. White, 494 F. App'x 143, 146 (2d Cir. 2012) (holding the plaintiff could not sustain an Eighth Amendment claim for deliberate indifference to serious medical needs where "there [was] no evidence that [the plaintiff's] conditions worsened over the hours of delay here").

Here, Plaintiff has submitted two expert reports that assert his condition deteriorated as a result of Defendants' failure to provide him prompt medical treatment. (See Dr. Keck Report, Ex. 16, at 4; Dr. Cohen Report, Ex. 15, at 2 ("The hours spent at the scene of the accident and at the police precinct allowed for worsening of his condition, which then became life threatening.").) Specifically, the record contains evidence that the delay "allowed for worsening of the spillage in gastric contents resulting in a prolonged surgery followed by an extended period of intubation." (See Dr. Cohen Report, Ex. 15, at 2; see also Dr. Keck Report, Ex. 16, at 4.) Upon the record presented, the Court finds a reasonable jury could conclude that the evidence

shows Officer Beisel's conduct at both the arresting scene and the CTS resulted in further significant injury to Plaintiff, thus establishing the objective requirement.

Second, with respect to the "subjective element," i.e., whether Officer Beisel failed to act while "actually aware of a substantial risk" of serious harm to Plaintiff's health, Salahuddin, 467 F.3d at 280, material issues of fact preclude resolving this inquiry as a matter of law. Rather, the record permits the inferences that, prior to and following his arrest, Plaintiff appeared disoriented and in a confused, distressed state; that Plaintiff consented to and passed three breathalyzers and a breath test; that Officer Beisel rebuffed efforts to treat Plaintiff's condition from a medical, rather than law enforcement, perspective; that County officers continued to disregard the possibility that Plaintiff was in severe medical distress while at CTS; and that County officers took Plaintiff to the hospital only because they wanted a blood test, not to provide Plaintiff medical treatment.  Cf. Wong v. Yoo, 649 F. Supp. 2d 34, 64 (E.D.N.Y. 2009).  While the record is ambiguous as to whether Plaintiff explicitly requested medical treatment at the scene of arrest or the CTS, this fact is not dispositive.  Id.  Thus, under these circumstances, a reasonable factfinder could conclude that Officer Beisel received information, and could see for himself, that Plaintiff was in serious need of immediate medical care but denied

him such care because he was deliberately indifferent to that need. Id. Further, for the reasons stated supra, whether Officer Beisel is entitled to qualified immunity cannot be determined on summary judgment.

Accordingly, Defendants' motion for summary judgment as to Plaintiff's denial of medical care claim is DENIED.

C.    Remaining Claims and Defendants

First, in the operative Complaint, Plaintiff alleges five additional causes of action: (1) failure to supervise; (2) Monell liability; (3) excessive force; (4) substantive due process; and (5) unconstitutional policies, practices, and procedures." (See generally Compl.) However, in his response to Defendants' pre-motion conference letter, Plaintiff stated that he agreed to withdraw the foregoing causes of action. (ECF No. 104 at 3 n.3; see also Opp'n at 1 n.1.) Accordingly, within thirty days from the date of this Memorandum & Order, Plaintiff is DIRECTED to file an amended complaint that omits the foregoing causes of action.

Second, the operative Complaint names as Defendants the County; Nassau County Police Sergeant Anthony Gabrielli; three Nassau County Police Officer John Does; and a Nassau County Assistant District Attorney John Doe. However, it is well settled that municipalities like the County cannot be held liable under Section 1983 on a respondeat superior theory. As noted supra,

30

Plaintiff has agreed to withdraw his Monell claim.  Therefore, to the extent Plaintiff seeks to hold the County liable for his remaining Section 1983 claims, those claims are DISMISSED as against the County.

Further, because Plaintiff fails to show how County Police Sergeant Anthony Gabrielli, who is named as Defendant in several remaining causes of action, personally participated in the alleged constitutional torts, all claims against him are DISMISSED.

Last, Plaintiff's claims against the John Doe Defendants must be dismissed for failure to prosecute.  "Where discovery has closed and the Plaintiff has had ample time and opportunity to identify and serve John Doe Defendants, it is appropriate to dismiss those Defendants without prejudice."  Delrosario v. City of New York, No. 07-CV-2027, 2010 WL 882990, at *5 (S.D.N.Y. Mar. 4, 2010).  Thus, Plaintiff's claims against the John Doe Defendants are DISMISSED.

## CONCLUSION

Accordingly, for the stated reasons, IT IS ORDERED that Defendants' motion for summary judgment is DENIED.  It is FURTHER ORDERED that:

> 1) Within thirty days from the date of this Memorandum & Order, Plaintiff shall file an amended complaint that

omits the five causes of action that he agreed to withdraw;

2) All claims against the County are DISMISSED, and the Clerk of the Court shall terminate the County as a party to this action;

3) All claims against County Police Sergeant Anthony Gabrielli and the John Doe Defendants are DISMISSED, and the Clerk of the Court shall terminate them as parties to this action; and

4) The parties shall use the following caption in all future filings:

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
MICHAEL ASSENG,

                Plaintiff,

     -against-              14-CV-5275(JS)(AYS)

NASSAU COUNTY POLICE OFFICER JOHN BEISEL,

                Defendant.
-----------------------------------X


                         SO ORDERED.


                         /s/ JOANNA SEYBERT
                         Joanna Seybert, U.S.D.J.


Dated: December _16_, 2021
      Central Islip, New York